UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERWIN M.L.,

               Petitioner,

      v.

WARDEN OF THE MESA VERDE ICE
PROCESSING CENTER,

               Respondent.

No. 1:26-cv-01049-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Erwin M.L.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 5).[1] Respondent filed an opposition. (ECF No. 6.) Petitioner replied. (ECF No. 8.) The parties have also filed responses, status reports, and supplemental briefing as directed by the Court. (ECF Nos. 10, 12, 13, 16, 18.) For the reasons set forth below, Petitioner's request for injunctive relief is GRANTED in part. Respondent is further ORDERED TO SHOW

---

[1] The Petition for Writ of Habeas Corpus (the "Petition") was initially filed by Petitioner's sister. (ECF No. 1 at 2.) A habeas corpus petition must be in writing and "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Local Rule 183(a) provides in relevant part: "Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same side appearing without an attorney." E.D. Cal. L.R. 183(a). Since Petitioner's initial filing of his habeas petition, however, the Court appointed counsel who is now enrolled in this case and filed a reply on behalf of Petitioner. (ECF Nos. 5, 7, 8.) Accordingly, any issues with respect to "next friend" standing and compliance with the Local Rules are now resolved.

1

CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

### I.   FACTUAL BACKGROUND

Petitioner was proceeding *pro se* at the time he filed his Petition for Writ of Habeas Corpus.  There are not many facts set forth in the Petition.  (*See* ECF No. 1.)  Petitioner's Form I-213 confirms that after Petitioner was removed to Mexico in 2023, he entered the United States without inspection on an unknown date, was not encountered by immigration authorities prior to the January 12, 2026 arrest and detention, and was never granted conditional release or parole.  (ECF No. 10-1 at 2–4.)  The Form I-213 also notes Petitioner was detained twice before on October 2, 2023 and October 7, 2023, and was removed to Mexico after each detention within days without being released or paroled.  (*Id.* at 4.)

On January 12, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers were attempting to apprehend another individual with a final order of removal and conducted a vehicle stop of Petitioner's car because he matched the description of this other individual.  (*Id.*)  Petitioner was then arrested and transported to the Stockton ICE office.  (ECF No. 1 at 1.)  Petitioner asserts he has no criminal history, he has not received a bond hearing before an immigration judge, and ICE has not demonstrated he is a flight risk or danger to the community.  (*Id.*)

On February 6, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking immediate release.  (*See id.*)  Petitioner concedes he is subject to reinstatement of removal under 8 U.S.C. § 1231(a)(5)[2] and subject to detention within the 90-day removal period under 8 U.S.C. § 1231(a)(1)(A).  (ECF No. 13 at 1.)  However, Petitioner argues the 90-day period has expired and Respondent failed to follow its own regulations to conduct a statutorily compliant custody review.  (ECF No. 18 at 2.)

---

[2]   8 U.S.C. § 1231(a)(5) provides: "If the Attorney General finds that [a noncitizen] has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry."

2

## II.     STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III.     ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A.     Likelihood of Success on the Merits

Petitioner establishes a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.    Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). A liberty interest may be strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondent argues Petitioner has never had any liberty interest improperly taken away by his detention nor has he been given any sort of liberty interest in the form of parole or conditional release between 2023 and 2026. (ECF No. 12 at 1–2.) However, Petitioner lived in the United States for at least two years in the period between 2023 and 2026, and thus still retains a liberty interest — even if diminished by the fact that he is subject to reinstatement of removal under 8 U.S.C. § 1231(a)(5). (*See* ECF No. 13 at 1.) Even if Petitioner is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

Thus, Petitioner maintains his protected liberty interest protected by the Due Process Clause. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, as explained above, Petitioner has a substantial private interest in remaining free from detention.  Petitioner also asserts that his private interest in "freedom from prolonged detention" is "unquestionably substantial."  (ECF No. 18 at 4 (quoting *Diep v. Wofford*, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744, at *4 (E.D. Cal. Feb. 25, 2025); *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)).)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given that Respondent failed to follow its own regulations.  *See J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where the government revoked petitioner's release without following the process required by its own regulations, forcing petitioner to file a habeas petition to obtain relief, without evidencing petitioner's removal was actually reasonably foreseeable); *see also Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026) ("The risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.").

Pursuant to 8 U.S.C. § 1231(a)(3), if a noncitizen "does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  A noncitizen "may" be detained beyond the 90-day removal period if the noncitizen is convicted of certain criminal offenses or has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.  8 U.S.C. § 1231(a)(6).  8 C.F.R. § 241.4(d) also describes the process for a statutorily compliant review — namely, that a copy of any decision to detain the noncitizen "shall be provided to the detained [noncitizen] and "[a] decision to retain custody shall briefly set forth the reasons for the continued detention."  Further, 8 C.F.R. § 241.4(d)(3) also provides that the

5

noncitizen's representative will receive "by regular mail a copy of any notice or decision that is being served on the [noncitizen] only to the attorney or representative of record."

Here, Respondent did not follow the regulations for a statutorily compliant custody review after the initial 90-day removal period. Respondent states in its status report regarding Petitioner's custody review process that ICE "completed Petitioner's 90-day post-order custody review and decided in its discretion to continue Petitioner's detention" and ICE "expects to have a finalized Continue Detention Letter served the morning of April 29, 2026." (ECF No. 16 at 1.) Respondent failed to set forth "the reasons for the continued detention" pursuant to 8 C.F.R. § 241.4(d). Additionally, Petitioner's counsel filed a supplemental brief on May 4, 2026, asserting she has not received a notice or copy of the full decision and record. (ECF No. 18 at 2.) Further, the Court agrees with Petitioner that a generic "discretionary" denial is insufficient where the regulations require an individualized assessment of danger and flight risk. (*Id.*) The risk that Petitioner is erroneously denied his liberty in the absence of this process is significant as Respondent does not claim Petitioner has been convicted of a certain criminal offense requiring continued detention or that Petitioner is unlikely to comply with an order of removal. *See* 8 U.S.C. § 1231(a)(6). Therefore, this factor weighs sharply in Petitioner's favor given that Respondent failed to follow its own.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination reviews are routine processes for Respondent. (Indeed, they are the very processes required in this case by 8 C.F.R. § 241.4(d).) Any delay in detention (if justified) for the time to provide notice and statutorily compliant custody review would have been minimal. It would also be less of a fiscal and administrative burden for Respondent to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to

6

the public of immigration detention are staggering."). The parole scheme seems to account for this reality, as it requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying a parolee's detention. *See Caisa Telenchana*, 2026 WL 696806, at *7 (citing 8 C.F.R. § 212.5(e)(2)(i)).

In balancing the government's interest in effectuating immigration laws against the considerable potential for erroneous deprivation of Petitioner's liberty interest, the Court finds that Petitioner was entitled to a statutorily compliant custody review at minimum. Respondent did not provide this. Thus, Petitioner has shown he is likely to succeed on the merits of his due process claim.

### B.   Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public

interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondent to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

### IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief (ECF No. 1), contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED in part;

2. Respondent is ENJOINED and RESTRAINED from continuing to detain Petitioner (A # 246-560-128) for more than **seven (7) days** from the date of this Order without a statutorily compliant custody review pursuant to 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.4(d);

3. Within **five (5) days** from the date of the custody review, Respondent is ORDERED to file a status report confirming that the review occurred, the date of the review, and the outcome of the review;

4. If Petitioner is released, Respondent is further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the Government bears the burden to show by clear and convincing evidence that material changed circumstances demonstrate (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondent is ORDERED TO SHOW CAUSE why this Court should not grant the

Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner. Respondent shall file responsive papers **within ten days** of the electronic filing date of this Order. Petitioner may file a reply, if any, **within thirteen day**s of the electronic filing date of this Order. **The parties shall indicate in their briefing whether they request a hearing**. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: May 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE